# In the United States Court of Federal Claims

No. 17-889C
Filed Under Seal: May 31, 2018
Reissued: June 13, 2018[1]

```
************************************
                                   *
IDEAL INNOVATIONS, INC.,            *
THE RIGHT PROBLEM, LLC, and,        *
ROBERT KOCHER,                      *
                                   *
                                   * Motion to Dismiss, RCFC 12(b)(1),
         Plaintiffs,                * RCFC 12(b)(6), Patent Infringement,
                                   * Statute of Limitations, Assignments of
    v.                              * Claims Act, 31 U.S.C. §3727(b)
                                   *
THE UNITED STATES,                  *
                                   *
         Defendant.                 *
                                   *
************************************
```

*John M. Caracappa*, Steptoe & Johnson, LLP, Washington, DC, for Plaintiffs

*Lee Livio-Alejandro Perla*, Trial Attorney, Commercial Litigation Branch, Civil Division, *Gary L. Hausken*, Director, *Chad A. Readler*, Acting Assistant Attorney General, Department of Justice, Washington, DC, for Defendant.

## OPINION AND ORDER

**DAMICH**, Senior Judge

Plaintiffs allege that the United States infringed Plaintiffs' patents and disclosed to others, including Plaintiffs' competitors, Plaintiffs' trade secrets. The Plaintiffs are Ideal Innovations, Inc. ("I-3"), The Right Problem ("TRP"), and Robert Kocher, the alleged inventor and original owner of the three patents-in-suit and President and CEO of both I-3 and TRP.[2] The three patents and trade secrets, generally involve an alleged novel configuration of armor to protect a wheeled vehicle from attack by explosively formed projectiles ("EFPs") while maintaining the vehicle's mobility. The Plaintiffs allege that, because of the infringement of its patents and the disclosure of the trade secrets, the Government purchased thousands of vehicles

---

[1] The parties were directed to file any redactions; no redactions were received.

[2] Because of the interrelationship of Kocher, TRP and I-3, the Court treats them as one entity and calls them collectively, "Plaintiffs," except when addressing specific arguments where a party uses the name of one of them.

1

from competitors rather than from the Plaintiffs, inflicting substantial harm on the Plaintiffs.

On June 29, 2017, Plaintiffs' filed a Complaint alleging three patent infringement claims and three disclosure of trade secret claims. On October 27, 2017, Defendant filed a Motion to Dismiss some of the patent claims as time barred and some of the trade secret claims as time barred or in the alternative for lack of jurisdiction and failure to state a claim. On January 23, 2018, Plaintiffs' responded. On February 27, 2018, Defendant replied. This case is fully briefed and ripe for decision.

For the reasons set forth below, this Court hereby denies-in-part, grants-in-part Defendant's Motion to Dismiss with regard to the patent claims. The Court further holds in abeyance its ruling on Defendant's Motion to Dismiss with regard to the trade secret claims.

I. BACKGROUND AND RELEVANT DATES

In 2005, U.S. troops fighting in Iraq and Afghanistan were suffering large numbers of casualties while traveling in wheeled vehicles as a result of explosively formed projectiles ("EFPs"). EFPs were designed to pierce from a long distance away, armor on vehicles carrying U.S. troops. Thus, there was a need to develop a response to EFPs that would better protect U.S. troops.

On January 20, 2006 Robert Kocher, through his company I-3 provided a briefing to the U.S. Army's Rapid Equipping Force ("REF") related to a commercially available vehicle being equipped with his invention which would better protect soldiers from EFPs. REF then submitted Kocher's proposal to U.S. Army Tank Automotive Command ("TACOM"). On February 3, 2006, TACOM responded to I-3's proposal and the REF Director decided not to pursue Kocher's proposal.

On June 24, 2006 Kocher briefed REF again. On August 21, 2006 Kocher filed a patent application that would become 7,401,540 ("'540 patent") with the United States Patent and Trademark Office ("PTO"). This was the first of three related patent applications filed by Kocher involving a potential armor solution for protecting wheeled vehicles from EFPs. On August 28, 2006, the Army Contracting Agency awarded I-3 with a purchase order for two prototype vehicles equipped with Kocher's armor system.

On April 16, 2007, I-3 made an unsolicited proposal to TACOM. Again on May 23, 2007, I-3 made an unsolicited proposal to Marine Corps System Command ("MARCORSYSCOM").

On July 31, 2007, MARCORSYSCOM issued a request for proposal known as Mine Resistant Ambush Protected ("MRAP-II") to address the threat of EFPs. Additionally, in order to equip those vehicles already in service with protection against EFPs, the United States Marine Corps ("USMC") initiated the MRAP Expedient Armor Program ("MEAP").

On December 18, 2007, MRAP-II awards were issued to I-3 and another supplier.

2

Additionally, over two billion dollars in contracts were awarded to pre-existing MRAP vendors to up-armor vehicles already in service pursuant to MEAP. In early 2008, at trade shows and upon request, the specification sheet related to a vehicle built by a supplier other than I-3 that protected against EFPs was available to the public. Throughout early 2008, multiple press releases, by this supplier, discussed the armor employed on this vehicle to protect against EFPs. In one of these press releases, the supplier announced that this vehicle would be available at the February 2008 Association of the United States Army ("AUSA") symposium.

On May 15, 2008, Kocher filed patent application that would become 8,365,648 ("'648 patent"). On July, 22, 2008, the '540 patent[3] issued. On August 20, 2008 counsel for I-3, Stephen E. Baskin, sent to Barry Edelberg, Office of General Counsel, Office of Naval Research, Department of the Navy ("Navy") a letter alleging that the US Government was purchasing vehicles that were covered in part by Kocher's '540 patent. In short, Baskin wrote: "It is our understanding . . . that the U.S. Government has been buying vehicles that are covered by at least one claim of the '540 patent." Def. Mot. to Dismiss, Ex A at 2.

On September 18, 2008, the Navy responded, requesting additional information to review the claim, and enclosed a copy of the appropriate regulation to file an administrative claim for patent infringement, Defense Federal Acquisition Regulation Supplement ("DFARS") 227.7004.

On March 18, 2011, Kocher assigned all right, title and interest to the '540 patent to TRP.[4]

October 1, 2012, the MRAP program was reported to be completed. October 2012, Kocher climbed inside of an MRAP vehicle built by another supplier at an AUSA trade show.

On December 26, 2012 Kocher filed the patent application that would become the 8,651,008 ("'008 patent"). On February 5, 2013 '648 patent issued and on February 18, 2014, the '008 patent issued.

On July 18, 2014, TRP filed an administrative claim with the Navy alleging patent infringement pursuant to DFARS 227.7002 related to the '540, '648, and '008 patents. The letter explained that the MRAP vehicles integrated with MEAP kits as well as vehicles procured under the MRAP-II program infringed on the patents.

On January 31, 2017, the Navy denied TRP's administrative claim. On June 29, 2017, Plaintiffs filed this Claim.

---

[3] The '540 patent was entitled a "Highly Survivable Urban Utility Vehicle ("HSUUV")." The other two patents were also entitled HSUUV.

[4] Kocher also assigned all the rights, title, and interests to TRP for the patent applications which would become the '648 patent (on December 26, 2012) and the '008 patent (on June 20, 2013).

## II. STANDARD OF REVIEW

### A. Standard of Review Under RCFC 12(b)(1)

Subject matter jurisdiction may be challenged at any time by the parties. *Booth v. United States*, 990 F.2d 617, 620 (Fed. Cir. 1993). Indeed, this Court's jurisdiction to entertain claims and grant relief, like all Federal courts, depends on the extent to which the United States has waived sovereign immunity. *United States v. Testan*, 424 U.S. 392, 399 (1976). The burden of establishing the Court's subject matter jurisdiction rests with the plaintiff, who must establish jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, (1992).

Even so, when faced with a motion to dismiss for lack of subject matter jurisdiction, pursuant to the Rules of the Court of Federal Claims ("RCFC") 12(b)(1), a court must assume that all undisputed facts alleged in the complaint are true, and it must draw all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see also Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). The movant, however, may challenge the truth of any facts upon which jurisdiction depends. *See Raymark Indus. v. United States*, 15 Cl. Ct. 334, 338 (1988). If it does, the plaintiff must come forward with a *prima facie* showing of jurisdiction. *See Raymark Indus.*, 15 Cl. Ct. at 338. The plaintiff cannot rely on its allegations. *See Hornback v. United States*, 52 Fed. Cl. 374, 377 (2002). The Court may look to evidence outside of the pleadings in order to ascertain the propriety of its exercise of jurisdiction over a case. *Rocovich v. United States,* 933 F.2d 991, 994 (Fed. Cir. 1991), *aff'd in relevant part, Martinez v. United States,* 281 F.3d 1376 (Fed. Cir. 2002).

### B. Standard of Review Under RCFC 12(b)(6)

Pursuant to RCFC 12(b)(6), the Court will grant Defendant's motion to dismiss if it finds the Plaintiff has failed to state a claim upon which relief may be granted. In considering a motion to dismiss for failure to state a claim upon which relief may be granted, the Court "must accept as true all of the allegations in the complaint" and "must indulge all reasonable inferences in favor of the non-movant." *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001). The Court must "treat all of the well-pleaded allegations of the complaint as true." *Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, (1977); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988). In order for a claim to properly be stated, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint should be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).

Although the materials the Court may consider is more limited under RCFC 12(b)(6) than under RCFC 12(b)(1), the Court may still go beyond the complaint's allegations. The Court, for example, may take judicial notice of any relevant public records. *See Zulueta v. United States*, 553 Fed. Appx. 983, 986 (2014) (quoting *Sebastian v. United States*, 185 F.3d 1368, 1374 (Fed. Cir. 1999)).

## III. DISCUSSION

The Complaint consists of six counts, the first three relate to patent infringement, more specifically, (I) infringement of the '540 patent, (II) infringement of the '648 patent, (III) infringement of the '008 patent. The final three counts in the Complaint relate to trade secrets as (IV) a taking under the Fifth Amendment, (V) a breach of an implied-in-fact contract, and (VI) misappropriation.

The Government argues that Plaintiffs' claims are barred by the running of the Statute of Limitations. Regarding the patent infringement claims, the Government also argues that they are barred by the Assignment of Claims Act. Regarding the disclosure of trade secret claims, the Government also argues that they should be dismissed for failure to state a claim.

Although the arguments of the parties regarding patent infringement and of trade secrets are intertwined, the Court believes that proper analysis requires that they be treated separately. In this regard, the Court notes that in the Complaint Plaintiffs distinguish trade secrets (which are also labeled, "proprietary, trade secret information" or "I-3 Proprietary Information") from patent infringement. For example, the Complaint uses the phrase "I-3 Proprietary Information . . . as well as [Kocher's] patented inventions." Compl. at 37. Therefore, the Court will equate "proprietary information" with "trade secrets," and differentiate these two phrases from patent infringement.

### A. Patent Infringement Claims

This Court possesses exclusive jurisdiction to entertain a suit against the United States by the owner of a United States patent to recover compensation for the unauthorized use of the patented invention. *See* 28 U.S.C. §1498. Pursuant to this statute, the United States may be held liable for patent infringement if, in relevant part, a contractor for the Government uses or manufactures a patented invention without a license with the authorization or consent of the Government. *See* 28 U.S.C. § 1498(a); *see also Zoltek Corp. v. United States*, 672 F.3d 1309, 1318 (Fed. Cir. 2012) (en banc).

To demonstrate that this Court has jurisdiction, Plaintiffs must show that they timely filed each claim within § 2501's six year limitations period. *See* 28 U.S.C. §2501; *see also Unitrac, LLC v. United States*, 113 Fed. Cl. 156, 161 (2013) (citing *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988)). The language of § 2501 is clear that whether a claim is timely depends on when it first accrued. *See* U.S. C. § 2501. Furthermore, § 2501's limitations period should be strictly construed in the sovereign's favor. *See MacLean v. United States*, 454 F.3d 1334, 1336 (Fed. Cir. 2006) (quoting *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1576-77 (Fed. Cir. 1988)).

The Government argues that events occurred in 2006 through 2008 that triggered the Plaintiffs' knowledge of the patent claims; therefore, claim accrual occurred no later than June 22, 2008 when the first, '540 patent issued. The Complaint was filed June 29, 2017. Thus, absent any tolling, some of Plaintiffs' patent claims are time barred because any accrual prior to June 29, 2011 is outside the six-year period allowed by the Statute of Limitations.

In response, Plaintiffs argue for an accrual date of October 2012. Plaintiffs point out that the '648 and '008 patents were not issued until February 5, 2013 and February 18, 2014 respectively, and as such those counts were timely filed on June 29, 2017. It is hard to follow the Government's logic that because of events occurring in 2006 through 2008, *all* patent claims accrued no later than June 22, 2008, when the '540 patent was issued. The Court does not see claim accrual before the issue dates of the '648 and '008 patents as possible. Therefore, the Court agrees with Plaintiffs that the patent infringement claims (II) '648 patent and (III) '008 patent are timely.

1. **The '540 Patent**

Regarding the '540 patent, Plaintiffs contend that it was not until October 2012 when they knew or should have known of the facts that gave rise to their claim.

The Court finds, however, that Plaintiffs' infringement claim for the '540 patent accrued on August 20, 2008. This is the date of a letter by Kocher's attorney, Stephen E. Baskin, which was sent to Barry Edelberg, Office of General Counsel, Office of Naval Research. On behalf of Kocher, Baskin wrote: "It is our understanding . . . that the U.S. Government has been buying vehicles that are covered by at least one claim of the '540 patent." Def. Mot. to Dismiss, Ex. A at 2. The Court's finding is supported by the fact that the Navy responded on September 18, 2008 requesting additional information and providing Plaintiffs with the DFARS on how to file a patent infringement claim. DFARS states that a , "a declaration that the claimant has made a bona fide attempt to determine the item or process which is alleged to infringe, but was unable to do so, giving reasons, and stating a reasonable basis for his belief that his patent or patents are being infringed." *See* DFARS § 227.7004(a)(6). *See Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed. Cir. 1988) (explaining that holding a claim first accrues when all the events which fix the government's alleged liability have occurred *and* the plaintiff was or should have been aware of their existence")(emphasis in the original).

However, 35 U.S.C. §286 provides tolling pursuant to the timely filing of an administrative claim with the appropriate governmental agency.

a. **Tolling of Statute of Limitations**

Section 2501's limitations may be tolled for patent claims pursuant to § 286 arising from a validly filed administrative claim. 35 U.S.C. §286; *see also Unitrac, LLC v. United States*, 113 Fed. Cl. 156, 164 (2013) (holding administrative claims that afford the United States an actual opportunity to deal with the claim administratively may give rise to tolling). As the issue is jurisdictional, the Plaintiffs have the burden to demonstrate they filed a valid administrative claim pursuant to § 286. *See Unitrac, LLC*, 113 Fed. Cl. at 164.

TRP filed an administrative claim of patent infringement for the '540 patent on July 17, 2014. On January 31, 2017, the administrative claim was denied.

Using the claim accrual date of July 22, 2008, the Government argues that Plaintiffs' are still out of time because even with filing an administrative claim with the Navy on July 17, 2014, when the final decision was issued on January 31, 2017, Plaintiffs' had five days left to submit its claim with this Court. The filing of the administrative claim on July 17, 2014 left only 5 days remaining to file a timely claim in this Court. The tolling provisions of § 286 ended when the Navy's final decision to deny the claim was issued. Plaintiffs' needed to file this claim in this Court within five days of that this decision or by February 5, 2017.

Applying the Court's claim accrual date of August 20, 2008 and the filing of the administrative claim on July 17, 2014, Plaintiffs' had thirty four days left to submit its claim to this Court once a final decision was rendered. In other words, the time began to run on August 20, 2008 when the Plaintiffs first notified the government of alleged patent infringement. The filing of the administrative claim on July 17, 2014[5] tolled the statute of limitations while the Navy reviewed the claim. However, only 34 days remained, July 17 to August 20, on the six year statute of limitations time period. The tolling provisions of § 286 ended when the Navy's final decision to deny the claim was issued. Hence, Plaintiffs' needed to file this claim in this Court within 34 days of that decision or by March 6, 2017.

Plaintiffs' argue that the tolling for the administrative claim continues beyond the date of the denial, because negotiations continued after the January 31, 2017 letter by the Navy. In sum, Plaintiffs contend that no final decision had been issued, the tolling provisions of § 286 continue, and their Complaint is timely. *See Unitrac*, 113 Fed. Cl. at 164-65; *see also Dow Chem. Co. v. United States*, 32 Fed. Cl. 11, 20 (1994), *aff'd in relevant part, rev'd in part*, 226 F.3d 1334, 1347 (Fed. Cir. 2000) (explaining that "further correspondence and negotiations between the parties the government voluntarily undertook an intensive and careful reconsideration of its position").

Unlike the cases cited by the Plaintiff, the Court finds no language in the denial letter that indicates a willingness to reconsider its decision denying the claim. *See e.g. Unitrac*, 113 Fed. Cl. at 165 (noting that the initial determination letter expressly provided for ongoing proceedings citing "[a]ny request for reconsideration must be submitted, in writing").

The Denial of Claim letter states, for example, on page one, the third paragraph: "This paper provides notice that the Administrative Claim set forth in your July 17, 2014 letter is denied." Plt. Resp. Ex 22 at 1. The letter goes on to detail the rationale for the denial and closes with the statement, "In summary, after a thorough analysis of your July 17, 2014 submission and the asserted patents we have denied your Administrative Claim." Plt. Resp. Ex. 22 at 6. The final statement of "if you have further questions concerning this action, please contact" does not expressly invite an opportunity to reconsider. *Id.*

---

[5] The Complaint stated the administrative claim letter was filed July 28, 2008, which the Government initially argued made the claim time barred. However, since the Navy's Denial of claim letter notes the date of the letter as July 17, 2008, the Court will use that date for computing the statutory time pursuant to §2501.

7

As a result, the tolling provisions of § 286 ended with the Navy's final decision to deny the claim. Plaintiffs needed to file this claim in this Court within 34 days of that decision or by March 6, 2017. Plaintiffs filed in this Court on June 29, 2017. Therefore, this Court grants Defendant's Motion to Dismiss Count I, infringement of the '540 patent, as out of time.

### 2. The '648 and '008 Patents

As stated above, the '648 and '008 patents are not time barred, because claims related to them could not have accrued before the patent were issued on February 5, 2013 and February 18, 2014 respectively. Therefore, they are within the six-year Statute of Limitations.

#### a. The Assignment of Claims Act

The Government next argues that under the Assignment of Claims Act ("ACA"), the patent claims assigned to TRP,[6] fail as the Act bars the assignment of unliquidated claims against the United States. *See* 31 U.S.C. §3727(b). Specifically, the Government argues a primary purpose of the ACA is such that the government need only deal with the original claimant and preserves its personal defenses that ordinarily could not be exercised against an assignee. *See 3rd Eye Surveillance, LLC v. United States*, 133 Fed. Cl. 273, 277 (2017) (citing *United States v. Shannon*, 342 U.S. 288, 291-92 (1952)). In short, a cause of action against the U.S. cannot be assigned to another.

The Plaintiff responds by pointing out that the '648 and '008 patents were assigned prior to issuance. Kocher assigned all the rights, title, and interests to TRP for the patent applications which would become the '648 patent (on December 26, 2012) and the '008 patent (on June 20, 2013). *See* Plt. Resp. at 27; *See also* Def. Mot. to Dismiss at Ex. 4 at 1-2 and 4-5. Plaintiffs contend the ACA is not applicable since it does not generally prevent assignment of patents. Furthermore, Plaintiffs argue the ACA does not apply to patent assignments that "otherwise do not run afoul of the purposes of the Act." *3rd Eye Surveillance*, 133 Fed. Cl. at 277.

The application of the ACA to the '540 patent is moot, since the Court holds that it is time-barred. As the Court has already held that patent infringement claims could not have accrued before the issue dates of the '648 and '008 patents, it follows that there were no unliquidated claim at the time of the assignments. Therefore, the ACA was not violated.

Furthermore, effectively, Kocher, TRP and I-3 are the same. Robert Kocher is the inventor and the President and CEO of both I-3 and TRP. The ACA does not apply to patent assignments that either "qualify for one of [the] judicially-recognized exceptions or otherwise do not run afoul of the purposes of the Act." *3rd Eye Surveillance*, 133 Fed. Cl. at 277. In another patent case, a judge in this court held that the ACA did not apply to patent claims that had accrued before assignment because none of the Act's purposes were implicated. *See MDS Assocs., Ltd. v. United States*, 31 Fed. Cl. 389, 393-94 (1994) (holding that assignment of patent rights to an "alter-ego partnership" after alleged infringement had already taken place was not

---

[6]. Kocher assigned to TRP the patent applications for what would become the '648 patent on December 26, 2012 and the '008 patent on June 20, 2013.

barred under the ACA because the assignor and assignee were essentially the same claimant). Similarly, Kocher and TRP are essentially the same claimants. Therefore, this Court denies the Defendant's Motion to Dismiss regarding Count II, infringement of '648 patent and Count III, infringement of '008 patent.

### B. Trade Secret Claims

In order to decide Defendant's Motion to Dismiss regarding trade secrets, the Court needs further briefing. Defendant argues that Plaintiffs' trade secrets were publicly disclosed or were revealed to others without proper safeguards. Although not brought up by the parties, the Court finds that it is important to know whether the Plaintiffs' trade secrets overlap with the applications and claims of the patents in suit. *Stutz Motor Car of Am. Inc, v. Reebok Int'l Ltd.*, Nos. 96-1062, 96-1083, 1997 U.S. App. LEXIS 11877 (Fed. Cir. May 16, 1997). In order to render its decision, the Court needs to know more precisely what the Plaintiffs are claiming as their trade secrets. This information will allow the Court to compare the alleged public disclosures and revelations of the Plaintiffs, as wells as to compare the trade secrets with the text of the patents.

### IV. CONCLUSION

For the reasons set forth above, the Court denies in part and grants in part the Defendant's Motion to Dismiss with regard to the patent claims. Specifically, the Court **GRANTS** the Motion to Dismiss as time barred Count I, the patent infringement of the '540 patent. The Court **DENIES** the Motion to Dismiss Count II and III, the patent infringement of the '648 and '008 patents.

The Court further holds in abeyance Defendant's Motion to Dismiss regarding trade secrets.

### IT IS THEREFORE ORDERED:

1. Plaintiffs shall file and serve a detailed description of what they are claiming as trade secrets and/or proprietary information (excepting the patents) on or before June 12, 2018. In order to preserve the confidentiality of this information, this information may be filed under seal and/or with a protective order.

2. Plaintiffs shall respond to Defendant's allegations and arguments regarding public disclosure—using the description submitted as per #1—contained in paragraph 20, pp. 7-8 of Defendant's Motion to Dismiss. This sur-response shall be limited to 10 pages and shall be filed and served at the same time as the description required in #1.

3. Plaintiffs shall comment on the *Stutz* case and its relevance to the trade secret portion of this case. This comment shall not exceed 5 pages and shall be filed and served at the same time as the description required in #1.

4. Defendant shall comment on the *Stutz* case and its relevance to the trade secret portion of this case. This comment shall not exceed 5 pages and shall be filed and served within 7 days after the filing of the Plaintiffs' submissions.

**IT IS SO ORDERED.**

s/Edward J. Damich<br>
EDWARD J. DAMICH<br>
Senior Judge