# In the United States Court of Federal Claims

No. 17-889C
Filed Under Seal: September 24, 2018
Reissued: October 2, 2018[1]

```
*************************************
                                     *
IDEAL INNOVATIONS, INC.,              *
THE RIGHT PROBLEM, LLC, and,          *
ROBERT KOCHER                         *
                                     * Trade Secrets; Motion to Dismiss; Statute of
                                     * Limitation; Tolling; Accrual Suspension; Stutz
                 Plaintiffs,         * Motor Car of America, Inc., v. Reebok
                                     * International, Ltd., Nos. 96-1062, 96-1083, 1997
           v.                        * U.S. App. LEXIS 11877 (Fed. Cir. May 16, 1997)
                                     *
THE UNITED STATES,                    *
                                     *
                 Defendant.          *
                                     *
*************************************
```

## OPINION AND ORDER

**DAMICH**, Senior Judge

    Plaintiffs Ideal Innovations, Inc. ("I-3"), The Right Problem ("TRP"), and Robert Kocher,[2] are the alleged inventors and owners of three patents and corresponding trade secrets. These patents and trade secrets generally involve an alleged novel configuration of armor to protect a wheeled vehicle from attack by explosively formed projectiles ("EFPs") while maintaining the vehicle's mobility.[3] Plaintiffs allege that the United States infringed on Plaintiffs' patents and disclosed to others, including Plaintiffs' competitors, Plaintiffs' trade secrets. As a result, Plaintiffs contend that the Government purchased thousands of vehicles from competitors rather than from the Plaintiffs, inflicting substantial harm on the Plaintiffs.

    On June 29, 2017, Plaintiffs' filed a Complaint alleging three patent infringement claims

---

[1] The parties were directed to file any redactions; the redactions are contained herein.

[2] Because of the interrelationship of Kocher, TRP and I-3, the Court treats them as one entity and calls them collectively, "Plaintiffs," except when addressing specific arguments where a party uses the name of one of them.

[3] These patents, the "'540" patent, "'648" patent, and "'008" patent, were all entitled a "Highly Survivable Urban Utility Vehicle" ("HSUUV").

and three trade secret claims.[4]  In lieu of an answer, Defendant filed a Motion to Dismiss (Defendant's "Motion") some of the patent claims as time-barred and some of the trade secret claims as time-barred.  *See* Def.'s Mot. to Dismiss for Want of Jurisdiction and Failure to State a Claim, ECF No. 11 ("Def.'s Mot. to Dismiss").  Separately, and in the alternative, Defendant sought dismissal for failure to state a claim on grounds that Plaintiffs' failed to protect the secrecy of their trade secrets.  Def.'s Mot. to Dismiss at 23-27.

The Court agreed in part with Defendant, and on May 31, 2018, issued an Opinion ("Order"), denying-in-part and granting-in-part Defendant's Motion with regard to the patent claims.[5]  The Court held in abeyance its ruling on Defendant's Motion with regard to the trade secret claims and ordered supplemental briefings on the precise trade secrets claimed by the Plaintiffs to allow the Court to compare both the alleged public disclosures and revelations of the Plaintiffs, and the trade secrets to the text of the patents.

Specifically, Plaintiff was ordered to: (1) provide a detailed description of the particular trade secrets and/or proprietary information alleged to be misappropriated; and (2) respond to Defendant's allegations and arguments concerning public disclosure of Plaintiffs' trade secrets.  In addition, the Court ordered both parties to address the relevance of *Stutz Motor Car of America, Inc. v. Reebok International Ltd.*, to the trade secret issues alleged in the present case.  Nos. 96-1062, 96-1083, 1997 U.S. App. LEXIS 11877 (Fed. Cir. May 16, 1997) ("*Stutz*").  The parties timely responded to the Court's order.

In light of the parties' supplemental briefs and after careful review of all the briefs and documents submitted, the Court **GRANTS** Defendant's Motion and dismisses Plaintiffs' trade secret claims as time-barred.  In the alternative, the Court holds that Plaintiffs' trade secrets were publicly disclosed in the '540 patent and are thus extinguished.  Those trade secrets that predated the issuance of the '540 patent are time-barred.  Finally, because the Court grants Defendant's Motion on other grounds, Defendant's alternative theory of dismissal for failure to state a claim, based on failure to protect trade secrets, is moot.  As the Court is addressing only Plaintiffs' trade secret claims, the facts set forth below relate only to those issues.[6]

### I. FACTS REGARDING TRADE SECRETS

On January 20, 2006, Robert Kocher, through his company I-3, provided a briefing to the U.S. Army's Rapid Equipping Force ("REF") regarding a commercially available vehicle

---

[4] The counts relating to Plaintiffs' trade secrets are: (Count IV) a taking under the Fifth Amendment; (Count V) a breach of an implied-in-fact contract to keep Plaintiffs' trade secrets confidential; and (Count VI) misappropriation.

[5] The Court dismissed as time barred Count I, the patent infringement of the '540 patent, and denied Defendant's Motion as to Count II and III, the patent infringement of the '648 and '008 patents.

[6] For a full recitation of the facts in this case, see *Ideal Innovations, Inc. v. United States*, No. 17-889C, ECF No. 40 (May 31, 2018).

capable of being equipped with his invention, which would better protect soldiers from EFPs. This proposal included trade secret information "including the technical characteristics and specifications of prototypes equipped with Mr. Kocher's armor system, the specific materials used in I-3's prototype implementation of the armor system, and implementation details (including photographs) showing how a commercially available vehicle can be transformed into an EFP-resistant vehicle." Pls.' Complaint, ECF No. 1 at 5-6 (June 29, 2017). The proposal "also included itemized cost savings over other military vehicles . . . ." Compl. at 6. REF submitted Kocher's proposal to U.S. Army Tank Automotive Command ("TACOM"), who ultimately rejected it on February 3, 2006. Compl. at 6.

On June 24, 2006, Kocher briefed REF again on his HSUUV invention.[7] Compl. at 6. REF agreed to observe a test of one of Kocher's prototypes, which occurred on March 10, 2006. Pls.' Resp., ECF No. 16 at 6-7 (January 23, 2018); Def.'s Mot. to Dismiss, ECF No. 11, Ex. F, Exhibit 3.

On August 21, 2006, Kocher filed a patent application that would become the 7,401,540 patent ("540 patent") with the United States Patent and Trademark Office ("PTO"). Compl. at 6. On August 28, 2006, I-3 was awarded a Ballistic Protection Experiment contract ("BPE"), for two prototype vehicles equipped with Kocher's armor system. Def.'s Supp. Resp., ECF No. 44, App. at 1-29.

On March 5, 2007, I-3 prototype vehicles were tested again at Aberdeen Proving Grounds and test shot data was collected. Def.'s Mot. to Dismiss at 4, Ex. F-3. On April 16, 2007 and May 23, 2007, I-3 submitted unsolicited proposals to TACOM and Marine Corps System Command ("MARCORSYSCOM"), respectively. Compl. at 7.

On June 15, 2007, MARCORSYSCOM rejected I-3's proposal because "it addressed a previously published agency requirement for MRAP vehicles." Compl. at 8. On June 18, 2007, I-3 requested the classified annex containing the MRAP I requirements. Compl. at 8.

On July 31, 2007, MARCORSYSCOM issued a request for proposal known as Mine Resistant Ambush Protected ("MRAP-II") to address the threat of EFPs, and the United States Marine Corps ("USMC") initiated the MRAP Expedient Armor Program ("MEAP") to equip those vehicles already in service with protection against EFPs. Compl. at 8-9.

On November 19-20, 2007, Kocher attended a two-day vendor workshop where the Army shared its counter-EFP armor design and research with suppliers and contractors. Def.'s Reply, ECF No. 22, Ex. 5 (Kleponis Decl.). On December 18, 2007, MRAP-II awards were issued to I-3 and another supplier. Compl. at 9. In early 2008, at trade shows and upon request, the specification sheet related to an EFP-resistant vehicle built by a supplier other than I-3 was available to the public. Def.'s Reply, ECF No. 22 at 6. This supplier also announced that it displayed its vehicles to the public on February 27-29, 2007. Def.'s Reply at 6.

---

[7] Kocher provided additional briefings and communicated with military personnel between February 4, 2006 and June 24, 2006 concerning the Focused Armor Vehicle ("FAV") project, which appears to be an early iteration of the HSUUV.

3

On July, 22, 2008, the '540 patent issued. On August 20, 2008 counsel for I-3, Stephen E. Baskin, sent to Barry Edelberg, Office of General Counsel, Office of Naval Research, Department of the Navy ("Navy") a letter alleging that the US Government was purchasing vehicles that were covered in part by Kocher's '540 patent. In short, Baskin wrote: "It is our understanding . . . that the U.S. Government has been buying vehicles that are covered by at least one claim of the '540 patent." Def.'s Mot. to Dismiss, ECF No. 11, Ex A at 2.

In December 2008, Kocher met with Brigadier General Michael Brogan and discussed the '540 Patent and its applicability to MRAP vehicles. Compl. at 10. General Brogan denied sharing Plaintiffs' confidential information with other vendors and stated that "the requirement for EFP protection was contained in a classified annex and that Plaintiffs could obtain it from the contracting officer." Pls.' Resp., ECF No. 16 at 17.

On October 1, 2012, the MRAP program was reported to be completed. Compl. at 9-10. On October 22-24, 2012, Kocher examined the interior of an MRAP vehicle built by another supplier at an AUSA trade show. Pls.' Resp. at 10-11. On June 29, 2017, Plaintiffs filed this Claim. *See generally* Compl.

## II. STANDARD OF REVIEW

Subject matter jurisdiction may be challenged at any time by the parties. *Booth v. United States*, 990 F.2d 617, 620 (Fed. Cir. 1993). This Court's jurisdiction to entertain claims and grant relief depends on the extent to which the United States has waived sovereign immunity. *United States v. Testan*, 424 U.S. 392, 399 (1976). The burden of establishing the Court's subject matter jurisdiction rests with the plaintiff. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Even so, when faced with a motion to dismiss for lack of subject matter jurisdiction, pursuant to the Rules of the Court of Federal Claims ("RCFC") 12(b)(1), a court must assume that all undisputed facts alleged in the complaint are true, and must draw all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see also Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). The movant, however, may challenge the truth of any facts upon which jurisdiction depends. *See Raymark Indus. v. United States*, 15 Cl. Ct. 334, 338 (Cl. Ct. 1988). If it does, the plaintiff must come forward with a *prima facie* showing of jurisdiction. *Id.* The plaintiff cannot rely only on its allegations. *See Hornback v. United States*, 52 Fed. Cl. 374, 377 (Fed. Cl. 2002). Moreover, the Court may look to evidence outside of the pleadings in order to ascertain the propriety of its exercise of jurisdiction over a case. *Rocovich v. United States*, 933 F.2d 991, 994 (Fed. Cir. 1991), *aff'd in relevant part*, *Martinez v. United States*, 281 F.3d 1376 (Fed. Cir. 2002).

## III. DISCUSSION

In their supplemental response, Plaintiffs explain that the trade secrets at issue "are embodied in the HSUUV prototype . . . as well as the documentary submissions," which "contain a multitude of proprietary features, designs, insights, ideas, and data that are Plaintiffs' trade

4

secrets." Pls.' Supp. Resp. to the Court's May 31 Order, ECF No. 38 at 2 (June 12, 2018) ("Pls.' Supp. Resp.").[8]

Although Plaintiffs do not provide specific dates for the alleged takings, Plaintiffs concede that "[t]he government's improper disclosure of Plaintiffs' trade secrets to competing manufacturers would have occurred between March 2007, when tests of the HSUUV demonstrated that it could successfully stop EFPs, and December 18, 2007, when the government issued $2.6 billion in contracts to modify MRAP I vehicles . . . ." Pls.' Supp. Resp. at 12. Based on this, the Court understands Plaintiffs' position to be that the trade secrets were delivered to the Government between January 20, 2006 and March 2007, and allegedly misappropriated between March 2007 and December 18, 2007.

Now that the Court understands the precise nature of Plaintiffs' trade secrets, there are several issues that must be addressed: (1) whether Plaintiffs' trade secrets claims were timely filed within the limitations period set forth in 28 U.S.C. § 2501; (2) whether Plaintiffs' trade secrets claims are subject to tolling under 35 U.S.C. § 286; (3) whether the limitations period was suspended pursuant to the accrual suspension doctrine; and (4) assuming *arguendo* that Plaintiffs' trade secret claims are not time-barred, whether Plaintiffs' trade secrets were extinguished by the disclosure of those secrets in the '540 Patent, pursuant to *Stutz*. The Court will address each issue in turn.

### 1. Statute of Limitations

To demonstrate that this Court has jurisdiction, Plaintiffs must show that they timely filed

---

[8] 

each claim within § 2501's six-year limitations period. *See* 28 U.S.C. § 2501; *see also Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). The language of § 2501 is clear that whether a claim is timely depends on when it first accrued. *See* 28 U.S.C. § 2501. Generally, under § 2501, a claim first accrues "when all the events have occurred that fix the alleged liability of the government and entitle the claimant to institute an action." *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1576-77 (Fed. Cir. 1988). A claim alleging a Fifth Amendment taking, however, "accrues when the act that constitutes the taking occurs." *Ingrum v. United States*, 560 F.3d 1311, 1314 (Fed. Cir. 2009). Moreover, because § 2501 operates as a condition to the government's waiver of immunity, the limitations period is strictly construed in favor of the sovereign. *See MacLean v. United States*, 454 F.3d 1334, 1336 (Fed. Cir. 2006) (quoting *Hopland Band of Pomo Indians*, 855 F.3d at 1576-77).

Here, Plaintiffs concede that the improper disclosure of the trade secrets occurred between March 5, 2007, when I-3 prototype vehicles were tested at Aberdeen Proving Grounds, and December 18, 2007, when the Government awarded contracts for the MRAP project. Pls.' Supp. Resp. at 12. Although Plaintiffs fail to identify a specific date upon which the trade secrets were allegedly taken, the Court understands Plaintiffs' position to be that the takings occurred between January 20, 2006 and March 5, 2007.

Applying an accrual date of either March 5, 2006 or December 18, 2007, it is clear that Plaintiffs' trade secret claims would be barred by § 2501's six-year limitations period. *See* 28 U.S.C. § 2501. Therefore, if the taking and misappropriation occurred on or before December 18, 2007, Plaintiffs had until December 18, 2013 to file their claim. Plaintiffs filed suit on June 29, 2017, nearly ten years after the alleged taking and misappropriation. Consequently, Plaintiffs claims are barred by § 2501's limitations period.

### 2. Tolling Under 35 U.S.C. § 286

Plaintiffs argue that their trade secret claims are subject to tolling under 35 U.S.C. § 286. The Court disagrees.

Section 286 allows for the tolling of the § 2501 limitations period for patent infringement claims while a validly filed administrative claim is being brought. *See* 35 U.S.C. § 286; *Unitrac, LLC v. United States*, 113 Fed. Cl. 156, 164 (Fed. Cl. 2013) (holding administrative claims that afford the United States an actual opportunity to deal with the claim administratively may give rise to tolling). On its face, § 286 applies only to patent claims. *See* 35 U.S.C. § 286. Although Plaintiffs' patent infringement and trade secrets claims may be closely related, they are nonetheless separate claims. As such, § 286 is inapplicable to Plaintiffs' trade secret claims. *See John R. Sand & Gravel Co. v United States*, 552 U.S. 130, 133-135 (2008) (holding that § 2501's limitations period prescribes a jurisdictional limit to the Court of Federal Claim's ability to adjudicate claims against the United States, cannot be waived, and may not be equitably tolled).

Therefore, because tolling under § 286 is inapplicable to trade secrets, any arguments concerning the suspension of the § 2501 limitations period must instead be analyzed under the "accrual suspension doctrine." *See Martinez v. United States*, 333 F.3d 1295, 1319 (Fed. Cir. 2003) (explaining that for purposes of 28 U.S.C. § 2501, the accrual suspension doctrine is

6

distinct from equitable tolling).

### 3. Accrual Suspension Doctrine

Plaintiffs argue that their claims did not accrue until October 22, 2012, because they were "unaware of critical facts," and "the earliest [they] 'should have been aware' of 'all the events which fix the government's alleged liability,' was October 2012." Pls.' Resp., ECF No. 16 at 14-15 (quoting *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed. Cir. 1988)). Although Plaintiffs fail to identify the legal doctrine underlying these arguments, the Court recognizes that Plaintiffs are seeking application of the "accrual suspension doctrine." *See Martinez*, 333 F.3d 1319.

Under the "accrual suspension doctrine," which is "strictly and narrowly applied," the accrual period for a claim subject to § 2501 may be suspended if the plaintiff shows that either: (1) the injury was "inherently unknowable" at the time the cause of action accrued; or (2) defendant concealed its acts such that plaintiff was unaware of their existence. *See Japanese War Notes Claimants Ass'n of Philippines v. United States*, 373 F.2d 356, 359 (Ct. Cl. 1967); *Ingrum v. United States*, 560 F.3d 1311 (Fed. Cir. 2009) (quoting *Martinez*, 333 F.3d at 1319). The "inherently unknowable" standard means that "a claim does not accrue until the claimant 'knew or should have known' that the claim existed." *Ladd v. United States*, 713 F.3d 648, 653 (Fed. Cir. 2013) (quoting *Ingrum*, 560 F.3d at 1315 n. 1); *see also Japanese War Notes Claimants*, 373 F.2d at 359 ("An example of [an 'inherently unknowable' injury] would be when defendant delivers the wrong type of fruit tree to plaintiff and the wrong cannot be determined until the tree bears fruit.").

### A. Plaintiffs Cannot Claim Their Injury Was "Inherently Unknowable"

In this case, Plaintiffs assert that their knowledge of the trade secrets claims were not triggered until October 24, 2012, when Kocher inspected the interior of a competitor's vehicle. Pls.' Resp., ECF No. 16 at 2-3, 14-16. Plaintiffs contend that because of the classified nature of government armament projects and the particular trade secrets at issue, the "[u]se of Plaintiffs' IP (as opposed to alternative armor designs) is not obvious from mere visual inspection of the exterior of an armored vehicle." Pls.' Resp. at 2, 15-16. Specifically, Plaintiffs allege that "[w]ithout knowledge of the government's interactions with other contractors, Plaintiffs could not have known of the key fact – whether the government shared their trade secret designs with their competitors – until they had sufficient knowledge of those vehicles' armor designs." Pls.' Resp. at 16.

However, as the Government points out, it is clear that Plaintiffs knew of their potential injury no later than April 21, 2008. In November 2007, Kocher attended an Army two-day vendor workshop in where the Army shared "its counter-EFP technology, even if classified, with potential MRAP contractors." Def.'s Reply at 5, Ex. 9-C (Kleponis Decl.). Next, on March 18, 2008, one of Plaintiffs' competitors made available to the public its "spec sheet," containing the specifications of the vehicle. Def.'s Reply at 6. This is the same vehicle that Plaintiffs cite to in Counts I, II, and III of their Complaint. *See* Compl. at 10-18; Def.'s Reply, Exs. 11, 12. Additionally, by March 6, 2008, I-3 had "made recent claims that" the Army "ha[d] taken part of

7

[I-3's] 'patented' solution and used it on other vehicles." Def.'s Reply at 7, Exs. 15-16 (Rooney Decl.). Further, on April 21, 2008, Kocher made a presentation to MARCORSYSCOM in which he criticized "[a]ttempts to Re-engineer [his] proprietary solutions and patent pending work." Def.'s Reply at 7, Exs. 4-5 (Dillion Decl.). Finally, on August 20, 2008, Kocher's attorney, Stephen E. Baskin, sent a letter to Barry Edelberg, Office of General Counsel, Office of Naval Research, claiming that "the U.S. Government has been buying vehicles that are covered by at least one claim of the '540 Patent." Def.'s Mot. to Dismiss, ECF No. 11, Ex. A at 2. Therefore, Plaintiffs clearly "knew or should have known" of their potential injury before 2012.

### B. Plaintiffs Have Not Shown Concealment of Material Facts

Plaintiffs also claim that the Government concealed material facts by misrepresenting that competitors' vehicles used different, independently developed armor configurations" and withholding "key specifications that would show otherwise." Pls.' Resp., ECF No. 16 at 3, 15-16; Ex. A ¶ 23, ¶¶ 29-30, ¶¶33-34 (Kocher Decl.). Plaintiffs complain that when the specification for competitors' vehicles were requested, "the government and the MRAP contractors stated that their designs were proprietary" and "[t]he Government would not share those designs nor disclose what technology was provided to Plaintiffs' competitors." Pls.' Resp. at 17. Moreover, Plaintiffs allege that when they requested the classified annexes for the MRAP I and MRAP II programs – i.e., the "key specifications" – the Government refused to turn them over. Pls.' Resp. at 16-17.

Plaintiffs' allegations in this regard are without merit. MARCORSYSCOM records indicate that the classified annexes were made available to the Plaintiffs and that Plaintiffs simply failed to retrieve them. Def.'s Reply, ECF No. 22 at 5, Ex. 2-A. Furthermore, Plaintiffs bid on, and won, the MRAP II contract. Compl. at 8-9. Plaintiffs do not explain how they accomplished this without having the annex containing the contract's requirements. Finally, it is perplexing that Plaintiffs complain of the Government's unwillingness to disclose other contractors' proprietary information in a suit alleging that the Government improperly disclosed Plaintiffs' proprietary information. Consequently, Plaintiffs have failed to show any concealment sufficient to warrant application of the "strictly and narrowly applied" accrual suspension doctrine. *See Martinez v. United States*, 333 F.3d 1295, 1319 (Fed. Cir. 2013).

Accordingly, the Court holds that Plaintiffs' claims accrued on August 20, 2008. Plaintiffs then had until August 20, 2014 to bring their claims. As the Complaint was filed on June 29, 2017, Plaintiffs' trade secret claims are barred by the six-year limitations period imposed by § 2501. Therefore, this Court grants Defendant's Motion to Dismiss pursuant to RCFC 12(b)(1), regarding Count IV, taking under the Fifth Amendment, Count V, breach of implied-in-fact contract, and Count VI, misappropriation of trade secret, as they are untimely.

### 4. Relevance of *Stutz*

In its May 31, 2018 Order, the Court ordered supplemental briefings on the relevance of *Stutz Motor Cars of America v. Reebok International*, to the trade secret issues alleged in the present case. Nos. 96-1062, 96-1083, 1997 U.S. App. LEXIS 11877 (Fed. Cir. May 16, 1997). In response, the parties agree that *Stutz* stands for the proposition that the disclosure of a trade

secret in a patent thereafter extinguishes the trade secret. *See* Def.'s Supp. Resp. at 2; Pls.' Supp. Resp. at 17. Assuming *arguendo* that Plaintiffs' trade secret claims are not barred by the statute of limitations, this means that Plaintiffs' trade secrets were extinguished upon their disclosure in the '540 Patent, as explained below. Moreover, to the extent that Plaintiffs' claims predate the '540 Patent, those claims are time-barred.

In *Stutz*, the Federal Circuit considered whether the plaintiff's trade secret — the "design and concept" of air bladder technology contained in certain athletic shoes — was extinguished when it was disclosed in a patent. *Stutz*, 1997 U.S. App. LEXIS 11877, at *1-6. The court held that "the disclosure of a trade secret in a patent places the information comprising the trade secret into the public domain, and it is no longer secret, and the trade secret is extinguished." *Id.* at *5. The court found that, "[s]ince Stutz's trade secret was extinguished on the date the patent was issued, Reebok could only be liable on Stutz' trade secret claims for products incorporating the trade secret that were sold by Reebok before the date the patent was issued." *Id.*

Here, although Plaintiffs agree with the essential holding of *Stutz*, they contend that "many of Plaintiffs' trade secrets were not disclosed in the patents." Pls.' Supp. Resp. at 18. Specifically, Plaintiffs claim that "none of the patents disclose the specific design, dimensions, and composition of the HSUUV's armor and related features." Pls.' Supp. Resp. at 18. Therefore, Plaintiffs argue, those secrets that were not disclosed in the patents retained their trade secret status. Pls.' Supp. Resp. at 18.

On the other hand, the Government maintains that "the '540 Patent divulged the essence of the design and concept for Plaintiffs' prototype," even if it did not divulge every detail, and points to numerous areas where Plaintiffs' alleged trade secrets overlap with the '540 Patent:

| Plaintiffs' Purported Trade Secret | Concept/Design in the '540 Patent |
| --- | --- |
| ■■■ | Figures 1-4 (placement), col. 2 (armor in areas attacked), col. 4, claim 1 (dimensions, weights, and densities). |
| ■■■ | Fig. 3, col. 3 (materials), col. 4, claim 1 (dimensions, weights, and densities) |
| ■■■ | Fig. 3, col. 2, 3 (RHA), Fig. 1, col. 2 (ballistic windshield) |
| ■■■ | Col. 2 (modified commercial vehicle, bottom armor pan) |

9



| | |
|---|---|
| ■■■ | Col. 4 ("modular" chassis and armored crew compartment) |
| ■■■ | Col 2, 4, claim 1 (configured to stop or defeat threats, weight, dimensions, densities) |
| ■■■ | Col. 1 (disclosing a low cost, commercial vehicle) |

Def.'s Supp. Resp. at 2-3.

In light of the parties' supplemental briefs, the Court agrees with the Government that Plaintiffs' trade secrets were disclosed by the '540 Patent. As illustrated by the chart above, the '540 Patent detailed each of the trade secrets claimed by Plaintiffs. While it may be true that not every detail of the trade secrets were disclosed precisely by the '540 Patent, the "design and concept" of the Plaintiffs' invention certainly was. Therefore, assuming *arguendo* that Plaintiffs' trade secret claims are not barred by the statute of limitations, the Court holds that Plaintiffs' trade secrets were extinguished by the issuance the '540 patent.

As Plaintiffs correctly observe, however, *Stutz* also endorses proposition that "subsequent disclosure of a trade secret does not obviate claims arising out of a prior misappropriation." Pls.' Supp. Resp. at 17; *see Stutz*, 1997 U.S. App. LEXIS 11877, at *5 ("Since Stutz's trade secret was extinguished on the date the patent was issued, Reebok could only be liable on Stutz' trade secret claims for products incorporating the trade secret that were sold . . . before the date the patent was issued."). According to the Plaintiffs, because "the misappropriation and use of the trade secrets occurred in the second half of 2007, well before any of the patents were issued," the Government may nevertheless remain liable for any claims that accrued before the issuance of the '540 Patent. Pls.' Supp. Resp. at 17.

The Court agrees with Plaintiffs on this point. However, as the Government correctly notes, even if Plaintiffs' "pre-issuance trade secret claims survived the '540 Patent's disclosures, such claims would be barred because more than six years have elapsed since the patent issued." Def.'s Supp. Resp. at 3-4. Although Plaintiffs argue that the limitations period on these claims did not begin to run until 2012 when they inspected the interior of a competitor's vehicle, the Court disagrees. As explained above, Plaintiffs clearly had knowledge of a potential injury by mid-2008. Therefore, to the extent that Plaintiffs' trade secrets survived the issuance of the '540 Patent, these claims are nevertheless time-barred.

### 5. Defendant's Alternative Theory of Dismissal

In addition to arguing that Plaintiffs' trade secret claims are time-barred, Defendant, in the alternative, seeks to have Plaintiffs' trade secret claims dismissed for failure to state a claim,

based on Plaintiffs' failure to protect its trade secrets. Def.'s Mot. to Dismiss at 23-27. However, in light of the Court's holding that Plaintiffs' trade secret claims are time-barred, this argument is moot.

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Defendant's Motion to Dismiss Plaintiffs' trade secrets claims as time-barred. In the alternative, the Court holds that Plaintiffs' trade secrets were publicly disclosed in the '540 Patent and thus extinguished. Those trade secrets that predated the issuance of the '540 patent are time-barred. Finally, Defendant's alternative theory of dismissal for failure to state a claim, based on Plaintiffs' failure to protect its trade secrets, is moot.

Defendant shall file an answer to the remaining Counts in the Complaint within 30 days of the entry of this order.

**IT IS SO ORDERED.**

s/ Edward J. Damich
EDWARD J. DAMICH
Senior Judge