**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

IDEAL INNOVATIONS, INC.,
THE RIGHT PROBLEM, LLC, and
ROBERT KOCHER,

                                   Plaintiffs,

        v.

THE UNITED STATES OF AMERICA,

                                   Defendant.

Case No. 1:17-cv-00889

Senior Judge Edward J. Damich

<u>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT
TO RCFC 12(b)(6)**</u>

OF COUNSEL:

Scott Arnold
Justin A. Chiarodo
Dipu A. Doshi
Megan R. Wood
**BLANK ROME LLP**
1825 Eye Street NW
Washington, DC  20006
Tel:  (202) 420-2200
SArnold@BlankRome.com
JChiarodo@BlankRome.com
DDoshi@BlankRome.com
MWood@BlankRome.com

Salvatore P. Tamburo
**BLANK ROME LLP**
1825 Eye Street, NW
Washington, DC 20006
Tel:  (202) 420-2200
STamburo@blankrome.com

*Counsel for Oshkosh Corporation*

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................................1

II.   THE '648 AND '008 PATENTS ARE INVALID DUE TO AN ON SALE BAR............3

    A.    Plaintiffs Do Not Dispute that the DARPA Proposal Anticipates or Renders
        Obvious the Claims of the '648 and '008 Patents......................................................3

    B.    Plaintiffs Do Not Dispute the Second Prong of Pfaff is Met....................................3

    C.    The DARPA Proposal was an Invalidating Offer for Sale ........................................3

        1.    The Validity of a Patent May be Challenged in a Rule 12(b)(6) Motion ....3

        2.    The DARPA Proposal was a Commercial Offer for Sale...........................4

        3.    The Experimental Use Exception Does Not Apply .....................................8

        4.    There is Not a Different Standard for Finding a Commercial Offer for Sale
           for Government Contracts and Commercial Contracts...............................13

III.  THE GOVERNMENT, AND ITS CONTRACTORS, HAVE A LICENSE TO
     PRACTICE THE '648 AND '008 PATENTS UNDER THE CRADA...........................16

    A.    Kocher's Test of Armor Kits (Not Attached to a Vehicle) in 2006 is Not an Actual
        Reduction to Practice of the Claimed Inventions ...................................................17

    B.    Plaintiffs Admit the Armored Vehicles were Built and Tested Pursuant to the
        CRADA....................................................................................................................19

IV.   CONCLUSION.............................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atlanta Attachment Co. v. Leggett & Platt, Inc.*,
   516 F.3d 1361 (Fed. Cir. 2008)..................................................................................10, 13

*Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*,
   731 F.2d 831 (Fed. Cir. 1984)..............................................................................................12

*Baylay v. Etihad Airways P.J.S.C.*,
   881 F.3d 1032 (7th Cir. 2018) ............................................................................................1, 9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................................................................12

*Content Extraction And Trans. v. Wells Fargo Bank*,
   776 F. 3d 1343 (Fed. Cir. 2014)..............................................................................................4

*Elan Corp., PLC v. Andrx Pharm., Inc.*,
   366 F.3d 1336 (Fed. Cir. 2004).........................................................................................6, 7

*Fisher-Price, Inc. v. Safety 1st, Inc.*,
   109 F. App'x 387 (Fed. Cir. 2004) .......................................................................................15

*Gaxiola v. City of Los Angeles*,
   No. CV 10-6632 AHM (FMO), 2011 WL 13152821 (C.D. Cal. Sept. 1, 2011).....................20

*Group One, Ltd. v. Hallmark Cards, Inc.*,
   254 F.3d 1041 (Fed. Cir. 2001).....................................................................................5, 6, 14

*Hellsin Healthcare SA v. Teva Pharmaceuticals USA, Inc.*,
   855 F.3d 1356 (Fed. Cir. 2017)...........................................................................................15

*Honeywell Int'l Inc. v. Nikon Corp.*,
   672 F. Supp. 2d 638 (D. Del. 2009)................................................................................15, 16

*Honeywell Int'l, Inc. v. Nokia Corp.*,
   400 F. App'x 557 (Fed. Cir. 2010) .......................................................................................16

*Hopkins v. Women's Div., Gen. Bd. of Global Ministries*,
   238 F. Supp. 2d 174 (D.D.C. 2002) .......................................................................................3

*In re Brigance*,
   792 F.2d 1103 (Fed. Cir. 1986).............................................................................................12

*In re Cygnus Telcomms. Tech., LLC, Patent Litig.*,
   536 F.3d 1343 (Fed. Cir. 2008)..................................................................12

*In re TLI Commc'ns LLC Patent Litig.*,
   87 F. Supp. 3d 773 (E.D. Va. 2015) ...........................................................4

*Kersavage v. United States*,
   36 Fed. Cl. 441 (1996) ................................................................................9

*Lacks Industries, Inc., v. McKechnie Vehicle Components USA, Inc.*,
   322 F.3d 1335 (Fed. Cir. 2003)..........................................................14, 15

*Linear Technology Corp. v. Micrel, Inc.*,
   275 F.3d 1040 (Fed. Cir. 2001)...................................................................7

*Merck & Cie v. Watson Labs., Inc.*,
   822 F.3d 1347 (Fed. Cir. 2016).....................................................................4

*Mopex, Inc. v. Barclays Glob. Inv'rs, N.A.*,
   No. 01 C 5976, 2003 WL 880996 (N.D. Ill. Mar. 5, 2003) .................17, 20

*Orbis Corp. v. Rehrig Pac. Co.*,
   970 F. Supp. 2d 875 (E.D. Wis. 2013).........................................................6

*Price v. Synapse Grp., Inc.*,
   No. 16-CV-01524-BAS-BLM, 2017 WL 3131700 (S.D. Cal. July 24, 2017) ........................3

*Purgess v. Sharrock*,
   33 F.3d 134 (2d Cir. 1994).........................................................................20

*RCA Corp. v. Data Gen. Corp.*,
   887 F.2d 1056, 1061 (Fed. Cir. 1989)................................................8, 9, 14

*Rock Island, A. & L. R. Co. v. United States*,
   254 U.S. 141 (1920)...................................................................................9

*Select Controls v. Am. Elec. Components, Inc.*,
   No. 07 CIV. 1306 (DLC), 2008 WL 216612 (S.D.N.Y. Jan. 22, 2008) ...................4

*Sparton Corporation v. United States*,
   89 Fed. Cl. 196 (2009) (Damich, J.) ................................................ *passim*

*Troise v. United States*,
   21 Cl. Ct. 48 (1990) .................................................................................12

*U.S. Envtl. Prods., Inc. v. Westall*,
   911 F.2d 713 (Fed. Cir. 1990)....................................................................12

*UMC Elecs. Co. v. United States*,
 816 F.2d 647 (Fed. Cir. 1987)..................................................................................................14

*Zacharin v. United States*,
 213 F.3d 1366 (Fed. Cir. 2000)................................................................................................13

*Zulueta v. United States*,
 553 Fed. Appx. 983 (Fed. Cir. 2014).........................................................................................8

**Statutes**

UCC § 1-303(b) ........................................................................................................................12

UCC § 2-201 ..............................................................................................................................4

UCC § 2-204 ..............................................................................................................................6

UCC § 2-305 ..............................................................................................................................6

## I.     INTRODUCTION

In their opening brief, Defendants showed that the DARPA Proposal was both a commercial offer for sale of the claimed inventions and that the inventions were ready for patenting at the time of the proposal.  Plaintiffs do not dispute that the DARPA Proposal anticipates, or renders obvious, each and every claim of U.S. Patent Nos. 8,365,648 ("the '648 Patent") and 8,651,008 ("the '008 Patent").  Nor do they dispute that the alleged inventions were ready for patenting at the time of the DARPA Proposal.  In other words, there is no dispute that the DARPA Proposal *is* the claimed invention(s).  Plaintiffs also do not credibly dispute that the DARPA Proposal includes the same indicia of a commercial offer that this Court analyzed in *Sparton Corporation v. United States*, 89 Fed. Cl. 196 (2009) (Damich, J.), *i.e.,* price, quantity, delivery schedule and specifications.  Instead, Plaintiffs assert two other arguments for why the DARPA Proposal was not a commercial offer, neither of which has any merit.

First, Plaintiffs assert the experimental use exception applies to the DARPA Proposal and precludes application of the on-sale bar.  That is incorrect.  Earlier this year, Kocher told the Government that the alleged inventions in the '648 and '008 Patents were actually reduced to practice by August 17, 2005.  Assuming that is correct, the experimental use exception cannot apply as a matter of law.[1]

Plaintiffs also assert this motion cannot be decided now because the Court must first consider the impact of the federal regulations in deciding whether there was an offer for

---

[1] To be sure, and as explained below, Kocher's assertion about this earlier actual reduction to practice is false.  But he should be held to his statement nonetheless.  *See Baylay v. Etihad Airways P.J.S.C.*, 881 F.3d 1032, 1040 (7th Cir. 2018).  To allow Kocher to change his story as it suits his interests only incentivizes others to do the same and not play it straight with the Government.  This argument should be rejected based on Kocher's assertion.

1

sale.  According to Plaintiffs, it is unfair to apply commercial standards to analyze whether there was an offer for sale in the government contract context.  Plaintiffs cite no authority to support their argument that there should be two different standards for analyzing offers for sale under 35 U.S.C. § 102(b).  This is not surprising as the Federal Circuit stated there is only one national standard that governs the analysis of on-sale bars.  Thus, as a matter of law, this argument should also be rejected and the DARPA Proposal should be found to be an invalidating offer for sale.

Alternatively, Defendants showed that the Government, and its contractors, have a license to the patents-in-suit pursuant to the Cooperative Research and Development Agreement ("CRADA") entered into by I-3 and the U.S. Army Research Laboratory ("ARL").  Plaintiffs do not dispute the contents of the CRADA,[2] or that it grants a license to any invention actually reduced to practice for the first time under the CRADA.  Instead, they argue the alleged inventions were not reduced to practice during the term of the CRADA because they were reduced to practice beforehand in July 2006 when REF conducted tests on armor kits.  But this is incorrect because, as Kocher admitted, the claims of the '648 and '008 Patents are directed to an armored vehicle, not merely an armor kit with no vehicle.  Plaintiffs do not dispute the first time an armored vehicle was built and tested was pursuant to the work under the CRADA.  Lastly, Plaintiffs assert that because the Government's signature is undated there is no way to tell whether the vehicles built and tested in March 2007 were done pursuant to the CRADA.  Plaintiffs, however, admitted in their opposition that the vehicles were, in fact, built and tested pursuant to the CRADA.  This argument should be rejected based on that candid admission.

---

[2] Plaintiffs agree the Court may take judicial notice of the CRADA and all other documents relied upon by Defendants in their motion.  Dkt. No. 52 at 9.

## II.      THE '648 AND '008 PATENTS ARE INVALID DUE TO AN ON SALE BAR

### A.      Plaintiffs Do Not Dispute that the DARPA Proposal Anticipates or Renders Obvious the Claims of the '648 and '008 Patents

Plaintiffs do not dispute that the second subpart of the first *Pfaff* prong, for finding an invalidating offer for sale, is met.  There is good reason for this concession.  In their opening brief, Defendants showed how each and every claim of the '648 and '008 Patents is either anticipated by, or rendered obvious in light of, the disclosure in the DARPA Proposal.  Dkt. No. 49 at 22–37.  Because this second subpart of the first *Pfaff* prong is not disputed, the Court should consider it met for purposes of deciding this motion.  *See Price v. Synapse Grp., Inc.*, No. 16-CV-01524-BAS-BLM, 2017 WL 3131700, at *14 n.6 (S.D. Cal. July 24, 2017) (treating defendant's argument as conceded since plaintiff did not respond to argument in its opposition to motion to dismiss); *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) (same).

### B.      Plaintiffs Do Not Dispute the Second Prong of *Pfaff* is Met

Plaintiffs also do not dispute that the second prong of *Pfaff*, for finding an invalidating offer for sale, is met.  This concession is also not surprising as Defendants identified at least three separate reasons supporting that the alleged inventions were ready for patenting before the critical date of August 21, 2005.  Dkt. No. 49 at 37–40.  Because this second prong of *Pfaff* is also not disputed, the Court should consider it met for purposes of deciding this motion.  *See Price*, 2017 WL 3131700, at *14 n.6.

### C.      The DARPA Proposal was an Invalidating Offer for Sale

#### 1.      The Validity of a Patent May be Challenged in a Rule 12(b)(6) Motion

Plaintiffs assert the affirmative defense of on-sale bar is inappropriate for a Rule 12(b)(6) motion to dismiss because it is a question of law based on underlying factual findings.  Dkt. No.

3

52 at 5, 10.  Not surprisingly, Plaintiffs cite no authority for this assertion.  In fact, courts

routinely find patents invalid for on-sale bar, and other reasons, on a motion to dismiss.  *See,*

*e.g.*, *Select Controls v. Am. Elec. Components, Inc.*, No. 07 CIV. 1306 (DLC), 2008 WL 216612,

at *5 (S.D.N.Y. Jan. 22, 2008) (granting motion to dismiss due to on-sale bar); *In re TLI*

*Commc'ns LLC Patent Litig.*, 87 F. Supp. 3d 773, 804 (E.D. Va. 2015), *aff'd on other grounds*,

823 F.3d 607 (Fed. Cir. 2016) (dismissing patent infringement claim for indefiniteness); *Content*

*Extraction And Trans. v. Wells Fargo Bank*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (affirming

dismissal of patent infringement claim for invalidity under 35 U.S.C. § 101).  Thus, it is entirely

appropriate for this Court to determine that the '648 and '008 Patents are invalid under 35 U.S.C.

§ 102(b) and dismiss the Complaint under Rule 12(b)(6).

## 2.   The DARPA Proposal was a Commercial Offer for Sale

Defendants showed the DARPA Proposal included material terms of a contract, such as

price, delivery schedule,[3] and specifications for the Highly Survivable Urban Utility Vehicles

("HSUUV").  And importantly, the proposal included a quantity term.  *See* Uniform Commercial

Code ("UCC") § 2-201 Official Comment 1 (explaining offer for sale need not contain all

material terms of contract, but "[t]he only term which must appear is the quantity term").  Thus,

the DARPA Proposal meets the requirements of a commercial offer for sale under the UCC, and

both Federal Circuit and this Court's precedent.  *See Merck & Cie v. Watson Labs., Inc.*, 822

F.3d 1347, 1351 (Fed. Cir. 2016) (finding fax, which included price, delivery, and payment

terms, "contained all the required elements to qualify as a commercial offer").

---

[3] Plaintiffs assert the DARPA Proposal "offered only a timeline based on an unspecified starting point."  Dkt. No. 52 at 13.  This is incorrect.  The proposal specified a detailed schedule of events to occur over a 60-day period.  Dkt. No. 49-2 at 16.  Naturally, the starting point would be whenever the offer was accepted and work began.  *Id.*

Plaintiffs have no answer for why this Court's reasoning in *Sparton* should not control the outcome here.  In *Sparton*, this Court analyzed the same indicia of a commercial offer that are found in the DARPA Proposal.  *See Sparton*, 89 Fed. Cl. at 212.  In that case, the only stated reason for why the unsolicited proposal, called the Active Mediterranean Proposal, was not found to be a commercial offer was the lack of evidence that the Government actually received the proposal.  *Id.* at 213.  That evidence is not missing here as Kocher admitted he gave the DARPA Proposal to the Government.  Dkt. No. 49 at 20.  Because Plaintiffs have no answer to *Sparton*, they bury it in a single paragraph at the back of their argument and attempt to confuse the issues by mixing and matching two different Proposals from that case.  Contrary to Plaintiffs' assertion, there was no issue of experimental use in the Active Mediterranean Proposal.  A different proposal in *Sparton*, the Engineering Change Proposal ("ECP"), dealt with that exception.  Thus, Defendants' argument that the DARPA Proposal is a commercial offer for sale in view of the Active Mediterranean Proposal in *Sparton* remains unrebutted, and this Court's analysis of that Proposal should be applied here.

Plaintiffs spend most of their opposition fabricating factual issues where none exist.  For example, relying on *Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041 (Fed. Cir. 2001), Plaintiffs assert that the DARPA Proposal is not an offer for sale because it does not include terms such as "I offer," or "I promise."  Dkt. No. 52 at 11.  But Plaintiffs neglect to tell the Court that the DARPA Proposal also does not include the terms "I quote" or "are you interested," which, as *Group One* explained, would suggest more preliminary negotiations than the offer for sale made in the DARPA Proposal.  *Id.*  In any event, as Plaintiffs concede (*id.*), *Group One* makes clear that "no one phrase is necessarily controlling" and that "[i]n any given circumstance, who is the offeror, and what constitutes a definite offer, requires looking closely at the language

5

of the proposal itself." *Grp. One*, 254 F.3d at 1048.  Moreover, *Group One* actually supports

dismissal.  The only reason identified by the Federal Circuit for not finding an offer for sale there

was "the lack of specific terms such as price and quantity," (*id.* at 1047), suggesting the alleged

offer was a preliminary proposal or invitation to negotiate.  *Id.*  No such terms are missing here.

The DARPA Proposal included both price ($496,300)[4] and quantity (2).  Dkt. No. 49-2 at 16–17.

Plaintiffs then assert the DARPA Proposal may not be an offer for sale if "additional

inputs that would inform the overall price remain to be set."  Dkt. No. 52 at 13 (citing *Elan*

*Corp., PLC v. Andrx Pharm., Inc.*, 366 F.3d 1336, 1342 (Fed. Cir. 2004)).  Plaintiffs never

explain what "additional inputs" remain to be set that would "inform the overall price."  The

DARPA Proposal did not provide a mere estimate.  It set forth a very specific dollar amount for

the manufacture and delivery of two HSUUVs.  Plaintiffs also ignore Defendants' authority

holding the mere fact that specific terms of any resulting agreement must still be negotiated does

not preclude a proposal from being a commercial offer.  Dkt. No. 49 at 18 (citing *Honeywell Int'l*

*Inc. v. Nikon Corp.*, 672 F. Supp. 2d 638, 644 (D. Del. 2009), *aff'd*, 400 F. App'x 557 (Fed. Cir.

2010)); *see also Orbis Corp. v. Rehrig Pac. Co.*, 970 F. Supp. 2d 875, 882 (E.D. Wis. 2013)

("[T]he possibility of additional negotiations does not preclude the legal fact that [an entity]

made an offer.").  Indeed, the UCC states that a contract for sale may be formed even though

multiple terms are left open.  UCC §§ 2-204, 2-305.  Lastly, and perhaps more importantly,

---

[4] Plaintiffs assert the DARPA Proposal mentioned only "costs," which is not "price," and, according to Plaintiffs, the proposal is unclear about who would bear the costs.  Dkt. No. 52 at 13.  This is not credible since the proposal included the hourly rates for five individuals, including Kocher, who would spend time working on the two vehicles.  The only reasonable way to interpret the proposal is that the Government would pay those hourly rates.  It is not reasonable to believe Kocher or I-3 would pay those hourly rates or bear those rates as a "cost." If Kocher did not intend to charge the Government for his and others' time working on the project, he would have omitted any hourly fees altogether from the proposal.

Plaintiffs' cited authority simply does not apply here because, in *Elan,* there was no offer for sale but rather an *offer to license.*  As *Elan* explained, "a sale of rights in a patent, as distinct from a sale of the invention itself, is not within the scope of the statute, and thus does not implicate the on-sale bar."  *Elan*, 366 F.3d at 1341.  In other words, Plaintiffs' reliance on *Elan* is misplaced because here there *was* an offer to sell the alleged inventions and not an offer to license.

Plaintiffs also unconvincingly attempt to explain away the clear language in the proposal urging DARPA to "do this now."  They allege the "this" referred to in the heading is not referring to the HSUUV described in detail on the seven pages immediately preceding that statement.  Dkt. No. 49-2 at 11-17.  Rather, they assert that the "this" refers to "the actualization of a 'high risk concept – rapidly seeking levels of protection never before envisioned,'" which is one of the bullet points on slide 14.  Dkt. No. 52 at 12.  But slide 13 (conveniently ignored by Plaintiffs), which explains "Why the Army can't do this now," refers to the same "this" as slide 14.  *Compare* Dkt. No. 49-2 at 18 (slide 13), *with id.* at 19 (slide 14).  Slide 13 explains that the Army cannot purchase the alleged inventions now because of its obligations under other projects. *Id.* at 18.  Slide 14, on the other hand, explains why, despite the fact that the Army cannot do "this" now, "DARPA should do this now."  *Id.* at 19.  Thus, when read in context, it is clear that the "this" referred to in both slides 13 and 14 is the HSUUV described in detail in slides 6-12 of the proposal.  Plaintiffs' efforts to confuse this clear meaning should be rejected.[5]

---

[5] Plaintiffs rely on *Linear Technology Corp. v. Micrel, Inc.*, 275 F.3d 1040 (Fed. Cir. 2001), but that case has nothing to do with the facts here.  There, the proposal was clearly a marketing piece without any price, quantity or delivery information.  The plaintiff there also stated that the product was not then available and not for sale.  Plaintiffs here never made any such statement at the time nor does any such statement appear in the DARPA Proposal.  *See* Dkt. No. 49-2 at 6–20.

Thus, for the reasons explained above and in Defendants' opening brief, the DARPA

Proposal was a commercial offer to sell the alleged inventions before the critical date.

### 3. The Experimental Use Exception Does Not Apply

Plaintiffs assert that, even if the DARPA Proposal was an offer for sale, "the subject of

that offer was experimental, not commercial, in nature," and therefore negates the statutory bar.

Dkt. No. 52 at 14-15.  For the reasons explained below, Plaintiffs are wrong.

As an initial matter, the experimental use exception does not apply because earlier this

year Kocher implied to the Government (specifically, ARL) that he actually reduced the alleged

inventions to practice by August 17, 2005.  Ex. 1 at 2.[6]  Specifically, in arguing the Government

did not have a license under the CRADA, Kocher asserted that the inventions "were all

conceived and reduced to practice by August 17, 2005 . . . which means that the inventions . . .

were not 'made' under the CRADA."  *Id.*  "Made" under the CRADA refers only to an *actual*

reduction to practice, not constructive.  Dkt. No. 49-3 at 10.  Thus, when Kocher referred to a

reduction to practice under the CRADA, he could only have meant an actual reduction to

practice no later than August 17, 2005.  The Federal Circuit has made clear that "experimental

use . . . ends with an actual reduction to practice."  *RCA Corp. v. Data Gen. Corp.*, 887 F.2d

1056, 1061 (Fed. Cir. 1989)*, overruled on other grounds by Pfaff v. Wells Elecs., Inc.*, 525 U.S.

55 (1998).  Thus, because Kocher claimed he actually reduced the inventions to practice no later

---

[6] This Court should take judicial notice of Plaintiffs letter to ARL dated April 2, 2018, because it is subject to the Freedom of Information Act ("FOIA") and thus constitutes a public record. Indeed, Plaintiffs agree the Court may take judicial notice of such documents.  Dkt. No. 52 at 9; *see also Zulueta v. United States*, 553 Fed. Appx. 983, 986 (Fed. Cir. 2014) (explaining court may and should take judicial notice of any relevant public records and consider them in motion to dismiss).

than August 17, 2005, the experimental use exception does not apply to the DARPA Proposal.
*See id.*  Plaintiffs should be bound by Kocher's assertion of an earlier reduction to practice for purposes of deciding this motion.[7]  *Baylay*, 881 F.3d at 1040 (holding dismissal under Rule 12(b)(6) may be based on, *inter alia,* "concessions made by the plaintiff") (quoting *Arnold v. Janssen Pharmaceutica*, 215 F. Supp. 2d 951, 956-957 (N.D. Ill. 2002)); *cf. Rock Island, A. & L. R. Co. v. United States*, 254 U.S. 141, 143 (1920) ("Men must turn square corners when they deal with the Government.").

Even if the Court were to ignore Kocher's assertion that the alleged inventions were actually reduced to practice no later than August 17, 2005, the experimental use exception still does not apply.  The Federal Circuit made clear that for purposes of the experimental use exception, it does not matter "whether the invention was under development, subject to testing, or otherwise still in its experimental stage at the time of the asserted [offer].  Instead, the question is whether the transaction constituting the [offer] was 'not incidental to the primary purpose of experimentation,' i.e., whether the primary purpose of the inventor at the time of the

---

[7] Plaintiffs' claim that the alleged inventions were actually reduced to practice earlier than March 2007 is false.  As Plaintiffs admitted in their Complaint, March 2007 was the first time tests were conducted on an armored vehicle, the subject of the claims in the '648 and '008 Patents.  *See* Dkt. No. 1 at 7, ¶25.  Though earlier tests were conducted, those tests were only of the armor design, by way of a "test shot" at an armor kit, and the armor was not attached to a vehicle, as required by the claims in the '648 and '008 Patents.  Thus, the earlier tests cannot be an actual reduction to practice of the claimed inventions.  *See Kersavage v. United States*, 36 Fed. Cl. 441, 449 (1996) ("The claims are the framework of the patent invention and reduction to practice occurs only if the physical creation conforms to each claim.") (citing *Standard Mfg. Co. v. United States,* 25 Cl. Ct. 1, 63 (1991)).  After Kocher made his uncorroborated assertion regarding an earlier reduction to practice (*see* Ex. 1 at 2), the Government pointed out the earlier tests were of the armor alone and requested evidence regarding the alleged earlier actual reduction to practice of the claimed inventions.  Kocher has failed to produce any such evidence.

[offer] . . . was to conduct experimentation." *Sparton*, 89 Fed. Cl. at 220 (quoting *Scaltech, Inc., v. ReteclTetra, L.L.C.*, 178 F.3d 1378, 1384 (Fed. Cir. 1999)).

The Federal Circuit, in *Atlanta Attachment Co. v. Leggett & Platt, Inc.*, 516 F.3d 1361 (Fed. Cir. 2008), provides guidance on how to determine whether the primary purpose of the offer was experimentation.  There, the offer was for a prototype, which arguably suggests that the buyer may conduct testing to see if the item meets its needs before ordering large quantities of the same design.  Nonetheless, the Federal Circuit found the experimental use exception did not apply.  *Id.* at 1365–66.  The court explained that while there are several factors that are instructive for determining whether the experimental use exception applies,[8] the issue of control over any contemplated testing can be dispositive.  *Id.* at 1366.  In other words, was the inventor going to perform the testing and/or in control of the proposed testing?  In that case, the court found the patentee "was not experimenting within the contemplation of the experimental use doctrine when it sold its invention to [the offeree] because [the offeree] performed the testing and because [the patentee] did not have control over the alleged testing to establish experimentation."  *Id.* (citing *Electromotive Div. of Gen. Motors Corp. v. Transp. Sys.*, 417 F.3d 1203, 1213 (Fed. Cir. 2005)).  "The fact that [the offeree] experimented with the prototypes is immaterial because the experimental use exception only concerns the actions of the inventors and their agents, and [the offeree] was not under the inventors' control."  *Id.*

This Court also addressed the same issue in *Sparton* in connection with the ECP. *Sparton*, 89 Fed. Cl. at 214–19.  There, the patentee claimed the offer was primarily directed toward experimentation, and thus, the on-sale bar did not apply.  *Id.* at 214.  This Court rejected

---

[8] Plaintiffs listed those factors in their opposition.  Dkt. No. 52 at 15.

that argument, explaining "it has long been the law that 'experimentation conducted to determine whether the [invention] would suit a particular customer's purpose does not fall within the experimental use exception.'" *Id.* at 217 (alteration in original) (quoting *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1355 (Fed. Cir. 2002)).  It explained "the fact that the ECP [*i.e.,* the offer at issue] included no restrictions on the Navy's use of the [product embodying the invention] and that Sparton did not in fact exert any control over anything the Navy ultimately did with the [product embodying the invention]" was further evidence that the primary purpose of the offer was not experimentation. *Id.* at 216.  Thus, relying on *Atlanta Attachment*, as well as other Federal Circuit authority, this Court rejected the patentee's argument that the primary purpose of the offer was experimentation and found that the ECP constituted a commercial offer. *Id.* at 219.  It reached this holding even though the patentee considered the devices "to be prototypes, engineering models, experimental units or any other such moniker." *Id.*

The same reasoning applies even more so here.  While the DARPA Proposal indicated some testing would be required, Plaintiffs point to nothing in the proposal to support the notion that they, and not the Government, would conduct, or control, those tests.  In fact, when the Government did eventually purchase two HSUUVs from Kocher at a later date, it was the Government, not Plaintiffs, that performed and controlled those tests.  Kocher admitted this in his declaration opposing the Government's motion to dismiss.  He declared that "[i]n March 2007, two vehicles ***were delivered to ARL*** for ballistic and mobility testing." Dkt. No. 16-1 at 6, ¶18 (emphasis added).  Kocher also acknowledged that "***ARL tests*** foreign captured vehicles and other classified projects," and alleged that "***ARL tests*** exposed detailed IP construction data of our vehicle." *Id.* (emphases added).  Kocher further declared that "***[a]ccording to ARL, the tests*** were an overwhelming success," and "***[w]e were informed*** that this was the first time General

11

Officers from all four Services witnessed test shots at ARL." *Id.* at ¶19 (emphases added).

Lastly, Kocher declared that "*[b]ased on ARL's successful Bull vehicle tests*," he submitted

unsolicited proposals to the Government. *Id.* at 7, ¶21 (emphasis added). Plaintiffs should be

bound by Kocher's admissions that the Government controlled and performed the testing. *See In*

*re Cygnus Telcomms. Tech., LLC, Patent Litig.*, 536 F.3d 1343, 1354 (Fed. Cir. 2008) (finding

patentee bound by admissions in sworn declaration).

As Plaintiffs admit in the Complaint, those March 2007 tests were performed at Aberdeen

Proving Ground ("APG") (Dkt. No. 1 at 7, ¶25), the same testing location that was contemplated

in the DARPA Proposal. Dkt. No. 49-2 at 16. Therefore, the tests contemplated in the DARPA

Proposal, testing whether an armored vehicle could withstand very dangerous EFP projectiles,

would also be conducted by the Government and not the patentee. *Cf. Troise v. United States*, 21

Cl. Ct. 48, 61 (1990) ("prior contracts between the parties provide valuable insight and evidence

as to contract requirements."); *see also* UCC § 1-303(b). Importantly, in their opposition,

Plaintiffs failed to even allege they were intending to perform, or control, the planned testing

identified in the DARPA Proposal.[9] Thus, as in *Atlanta Attachment*, the lack of any evidence

---

[9] After Defendants established a *prima facie* case that the on-sale bar applies, Plaintiffs have the burden to come forward with convincing evidence that the experimental use exception applies. *U.S. Envtl. Prods., Inc. v. Westall*, 911 F.2d 713, 716 (Fed. Cir. 1990) (once alleged infringer establishes *prima facie* case of on sale bar, "patent holder must 'come forward with convincing evidence to counter that showing'"); *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 839 (Fed. Cir. 1984) (same). Despite their burden, Plaintiffs offered no evidence of experimental use, much less convincing evidence. Instead, Plaintiffs conclude there is a "likelihood" that the experimental use exception applies. Dkt. No. 52 at 15–16. Such conclusory assertions, especially ones made for the first time during litigation, do not come close to defeating a motion to dismiss. *See In re Brigance*, 792 F.2d 1103, 1108 (Fed. Cir. 1986) (inventor's protestation of intent to experiment, expressed for the first time during litigation, is of little evidentiary value, at best); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

that Kocher or I-3 would conduct the testing, or control the testing, is also dispositive here.[10]  *See Atlanta Attachment*, 516 F.3d at 1366.  It proves that the primary purpose of the DARPA Proposal was not experimentation and the experimental use exception does not apply.  *See id.*

        4.     <u>There is Not a Different Standard for Finding a Commercial Offer for Sale for Government Contracts and Commercial Contracts</u>

Plaintiffs argue that because Kocher knew Dr. Morish himself could not personally accept the terms of the DARPA Proposal and create a binding contract without having first complied with the federal regulations governing his and DARPA's conduct, Kocher was not making an offer for sale.  The only "evidence" Plaintiffs cite in support of this argument are the federal regulations governing the parties' relationship.  Dkt. No. 52 at 17 ("Here, federal regulations govern not only the course of dealing between the parties but also the ability of DARPA to accept any offer posed by anyone in the industry.").  In making this argument, Plaintiffs advocate for two standards in determining whether an offer for sale was made; one for the government-contracting industry and another for the non-government industry.  *Id.* at 20–21.  According to Plaintiffs, a proposal that may be an offer for sale in the non-government industry might not be an offer for sale in the government-contracting industry because the government-

---

("[O]n a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'") (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[10] Plaintiffs also assert the fact that "DARPA is generally a research-funding organization and is not focused on procurement . . . underscores the likelihood that if Mr. Kocher sought any contractual relationship, it would have been experimental in nature."  Dkt. No. 52 at 15–16.  But even if the primary purpose of the offer was for research and development—which it was not, as it was an offer to sell two HSUUVs—the Federal Circuit already found that type of offer "does not suffice to avoid the on-sale bar."  *See Zacharin v. United States*, 213 F.3d 1366, 1370 (Fed. Cir. 2000) ("Likewise, the fact that the products sold to the Army were to be used for testing rather than as routine production units, is not sufficient to avoid the effect of the on-sale bar. A contract to supply goods is a sales contract . . . regardless of whether the goods are to be used for testing in a laboratory or for deployment in the field.").

offeree's actions are governed by the Federal Acquisition Regulations and because the offeree may not be able to actually accept the offer unless and until all federal regulations are complied with.  Not surprisingly, Plaintiffs cite no authority to support their proposed different standard for government procurement.  Indeed, Defendants were unable to locate a single case where the court analyzed the federal regulations to determine whether an offer for sale was made to a government agency.  To the contrary, at least three cases analyzing an offer for sale to a government agency did *not* consider the federal regulations.  Rather, they analyzed the law of contracts, as generally understood.  *See Sparton*, 89 Fed. Cl. at 212-13; *see also RCA*, 887 F.2d at 1059-63; *UMC Elecs. Co. v. United States*, 816 F.2d 647, 657 (Fed. Cir. 1987).

Moreover, the Federal Circuit already rejected a multi-standard approach to analyzing an on-sale bar, as Plaintiffs urge here.  In *Group One*, the trial court applied Missouri law to analyze whether correspondence between two parties was an offer for sale.  *Grp. One*, 254 F.3d at 1047. The Federal Circuit found the trial court erred in applying Missouri law, explaining that

> [b]ecause of the importance of having a *uniform national rule regarding on-sale bar*, we hold that the question of whether an invention is the subject of a commercial offer for sale is a matter of Federal Circuit law, *to be analyzed under the law of contracts as generally understood*.  To hold otherwise would potentially mean that a patent could be invalid in one state, when the patentee's actions amounted to an offer under the laws of that state, and valid in a second state, when the same actions did not amount to an offer under the laws of that second state.  *Such a result is clearly incompatible with a uniform national patent system*.

*Id.* (emphases added).  Using this same reasoning, this Court should reject Plaintiffs unsupported urging of a multi-standard approach.

Plaintiffs cite *Lacks Industries, Inc., v. McKechnie Vehicle Components USA, Inc.*, 322 F.3d 1335 (Fed. Cir. 2003) to support their position that the Court should consult the federal regulations in determining whether there was an offer for sale here.  Dkt. No. 52 at 16–17.  But

14

that case stands for the unremarkable proposition that courts may consider the UCC, including its course of dealing provisions, in an offer for sale analysis.  *Lacks Indus.*, 322 F.3d at 1348.  *Lacks Industries* says nothing about consulting the federal regulations when analyzing offers for sale in the government-contracting industry.  For the same reasons, Plaintiffs citation of *Fisher-Price, Inc. v. Safety 1st, Inc.*, 109 F. App'x 387 (Fed. Cir. 2004) does not support their position.

Plaintiffs' reliance on *Hellsin Healthcare SA v. Teva Pharmaceuticals USA, Inc.*, 855 F.3d 1356 (Fed. Cir. 2017) is just as puzzling as that case also does not support looking to the federal regulations to determine whether there was an offer for sale.  And to the extent the court addresses the requirement of FDA approvals, the decision is far from helpful to Plaintiffs.  There, the court makes clear "it has been implicit in our prior opinions that the absence of FDA or other regulatory approval before the critical date does not prevent a sale or offer for sale from triggering the on-sale bar."  *Id.* at 1365.  Thus, even if the offer for sale made by the DARPA Proposal was contingent on regulatory approval—and there is no allegation that it was—the Federal Circuit has confirmed the absence of such approval does not prevent an on-sale bar.

Even in the non-governmental contracting fields, courts have already rejected arguments similar to those made by Plaintiffs here.  For example, in *Honeywell*, the patentee argued that a detailed proposal, much like the DARPA Proposal, was not an offer for sale because, based on the course of dealings in that particular field, where many months of work were still required, and many details still needed to be worked out, the offer could not have been accepted by the offeree.  672 F. Supp. 2d at 644.  The patentee there argued, as do Plaintiffs here, that because the offeror knew the offeree could not accept the proposal, it was not an offer for sale.  *Id.*  The court rejected these arguments and found the proposal was an offer for sale under § 102(b).  *Id.* The court explained that although the offeree subjectively did not have the authority to accept, or

15

otherwise would not actually accept the offer in that condition at that time, "acceptance is not required for a proposal to be considered a commercial offer of sale.  Rather, the focus of the inquiry is whether the offer could have been made into a binding contract by formal acceptance." *Id.*  The court continued, stating "the fact that further negotiations might arise, or even be expected, does not preclude the [proposal] from being an invalidating offer where, as here, the [proposal] contained the essential terms of an offer and [the offeror] manifested its intent to make an offer to [the offeree]." *Id.*  The Federal Circuit affirmed this decision.  *Honeywell Int'l, Inc. v. Nokia Corp.*, 400 F. App'x 557 (Fed. Cir. 2010).  Similarly, here, whether Dr. Morish at DARPA had the authority to accept, whether he subjectively would have accepted, or whether additional protocols were required before acceptance, simply does not matter to the analysis.

Moreover, there is nothing in the DARPA Proposal to support the notion that Kocher was not intending to offer his alleged inventions for sale at that time.  In fact, the opposite is true.  As the Federal Circuit explained, the only relevant questions are whether the DARPA Proposal contains the essential terms of an offer for sale and whether Kocher manifested his intent to make an offer for sale to DARPA.  As explained in Defendants' opening brief, the answer to both questions is yes.  Thus, this Court should find the alleged inventions covered by the '648 and '008 Patents were the subject of a commercial offer for sale to DARPA prior to the critical date.  And because Plaintiffs do not dispute the other elements of the on-sale bar are met, this Court should declare the patents invalid and dismiss Plaintiffs' Complaint with prejudice.

## III.    THE GOVERNMENT, AND ITS CONTRACTORS, HAVE A LICENSE TO PRACTICE THE '648 AND '008 PATENTS UNDER THE CRADA

Plaintiffs admit, as they must, that the CRADA grants a license to inventions actually reduced to practice under the CRADA.  Dkt. No. 52 at 22 ("The CRADA provided for a license

16

to certain inventions developed throughout the course of the project."). Plaintiffs alleged in their Complaint that Kocher actually reduced his inventions to practice between March 5–19, 2007. Dkt. No. 1 at 7, ¶25. ("From March 5-19, 2007, I-3 prototype vehicles were tested at the Aberdeen Proving Ground. To the Government's astonishment, the prototype vehicles exhibited unmatched superior armor characteristics: EFPs could not penetrate the sides of the vehicle, and the armor was light enough such that the vehicles maintained a high degree of mobility."). Lastly, Plaintiffs admit ARL and I-3 entered into a CRADA "*pursuant to which two prototype vehicles . . . were built and tested*." Dkt. No. 52 at 8 (emphasis added). In other words, Plaintiffs admit that Kocher's armored vehicles were built and successfully tested (*i.e.*, actually reduced to practice) for the first time pursuant to the CRADA. That should be the end of the matter as Plaintiffs should be bound by their statements to this Court. *See Mopex, Inc. v. Barclays Glob. Inv'rs, N.A.*, No. 01 C 5976, 2003 WL 880996, at *2–3 (N.D. Ill. Mar. 5, 2003) (representation in opposition to motion to dismiss constituted binding judicial admission).

Despite these fatal admissions, Plaintiffs nonetheless attempt to evade the license they already granted the Government by asserting that (i) an earlier 2006 test of an armor kit; *i.e.,* armor not attached to a vehicle, was an actual reduction to practice of the claimed inventions; and (ii) the CRADA's effective date may be later than December 21, 2006, thus, the inventions may not have been actually reduced to practice under the CRADA. Plaintiffs' arguments have no merit.

A. **Kocher's Test of Armor Kits (Not Attached to a Vehicle) in 2006 is Not an Actual Reduction to Practice of the Claimed Inventions**

As Defendants showed, the Statement of Work ("SOW") for the CRADA provides:

The program *goal* is to *integrate ARL-designed armor(s) onto a vehicle* being developed by Ideal Innovations Inc. Ideal Innovations Inc. and ARL will mutually

17

> develop design constraints and choose the best available armor technology based
> on ARL data. ARL will perform limited optimization of the design through
> computer simulations. The final selected design will be tested by ARL to gain
> confidence in its performance. *Ideal Innovations Inc. will integrate this design onto*
> *a vehicle platform. Ideal Innovations Inc. and ARL will work together to overcome*
> *armor integration issues if and when they arise.*

Dkt. No. 49 at 13-14 (emphases added). This SOW covers the same subject matter as the '648

and '008 Patents: to integrate EFP-resistant armor onto only certain portions of a military vehicle

to manage the vehicle's weight and maintain its usefulness. *Id.* Importantly, both the SOW and

the alleged inventions have the same description of the armored vehicles tested at APG in March

5–19, 2007. Dkt. No. 1 at 7, ¶25 ("EFPs could not penetrate the sides of the vehicle, and the

armor was light enough such that the vehicles maintained a high degree of mobility.").

In response, Plaintiffs point to the July 2006 testing of armor kits (armor not attached to a

vehicle) and allege that the claimed inventions were actually reduced to practice at that time,

instead of March 5–19, 2007. Dkt. No. 52 at 23 (citing Dkt. No. 1 at 6, ¶22). But the claims of

the '648 and '008 Patents are not directed to armor kits unattached to vehicles. Rather, they are

directed to armored vehicles. Dkt. No. 1-2 at 9 ('648 Patent claims); Dkt. No. 1-3 at 8 ('008

Patent claims). Plaintiffs' argument is also inconsistent with Kocher's prior admission in this

case where he disclaimed any inventiveness in the armor itself. Instead, he declared his

invention was directed to the *placement of the armor on a vehicle*. Dkt. No. 16-1 at 3, ¶9 ("The

key innovation was not developing an armor composition that could stop the EFP. Rather the

advance was to integrate and configure this heavy armor on a vehicle . . . without adding so

much weight of armor that it could not be carried."); *see also id.* at 4, ¶11 ("Designing armor

compositions that can stop an EFP is not a significant problem. Rather, my invention was of a

configuration and arrangement of the armor [on the vehicle]."). Importantly, as Plaintiffs allege

in the Complaint, the first time Kocher's armored vehicles were successfully tested was March 2007.  Dkt. No. 1 at 7, ¶25.  Any testing in 2006 of armor kits alone (not attached to a vehicle) are not an actual reduction to practice of the claimed inventions.

Plaintiffs also assert the armor on the vehicles tested in March 2007 was ARL's design and that Kocher had already designed the vehicle before then, thus the testing does not fall within the SOW.  Dkt. No. 52 at 23–25.  But even accepting everything Plaintiffs allege as factually correct, none of that changes the fact that the first time Kocher's vehicle with EFP-resistant armor was successfully *built and tested*—the requirements for an actual reduction to practice of the claimed inventions under the CRADA—was between March 5–19, 2007.  Plaintiffs never deny this critical fact.  Thus, this Court should find that Kocher actually reduced the alleged inventions to practice for the first time during the term of the CRADA.[11]

### B.     Plaintiffs Admit the Armored Vehicles were Built and Tested Pursuant to the CRADA

Plaintiffs assert that because the Government representative's signature on the CRADA is undated, the actual reduction to practice of the alleged inventions may have predated the CRADA.  Dkt. No. 52 at 25–26.  But this ignores that Plaintiffs already admitted the vehicles were built and tested pursuant to the CRADA:

> the U.S. Army Research Laboratory ("ARL") awarded Mr. Kocher's company,
> Ideal Innovations, Inc. ("I-3"), a standard Cooperative Research and Development

---

[11] Plaintiffs accuse Defendants of taking inconsistent positions regarding Plaintiffs' reduction to practice for the on-sale bar and CRADA grounds of its motion.  Dkt. No. 52 at 21–22.  That is incorrect.  For their on-sale bar defense, Defendants showed that the alleged inventions were ready for patenting at the time of the DARPA Proposal on August 16, 2005, and pointed to Kocher's *constructive* reduction to practice one day later on August 17, 2005, when he filed his provisional patent application, as further evidence of that fact.  For the CRADA ground, Defendants pointed to Kocher's ***actual*** reduction to practice of the claimed inventions in March 2007; *i.e.*, building and testing an armored vehicle meeting the claim limitations.  Thus, Defendants' grounds are entirely consistent with one another and the law.

Agreement *("CRADA"), pursuant to which two prototype vehicles incorporating ARL's armor technology into Mr. Kocher's configuration were built and tested.* See generally Ex. 2 [referring to CRADA]. The testing showed that the joint effort to implement ARL's armor technology on Mr. Kocher's design was a success.

*Id.* (emphases added). This admission is fatal to Plaintiffs' new conclusory assertions regarding the Government's signature on the CRADA. *See Mopex*, 2003 WL 880996, at *1; *Gaxiola v. City of Los Angeles*, No. CV 10-6632 AHM (FMO), 2011 WL 13152821, at *15 n.30 (C.D. Cal. Sept. 1, 2011), *report and recommendation adopted*, No. CV 10-6632 AHM (FMO), 2011 WL 13152820 (C.D. Cal. Sept. 30, 2011) (plaintiff's statement in its opposition to motion to dismiss was judicial admission); *see also Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994) ("A court can appropriately treat statements in briefs as binding judicial admissions of fact.") (citing *Leslie v. Knight Soda Fountain*, 55 F.2d 224, 225 (2d Cir.1932)). Regardless of when the Government actually signed the document, the critical fact that Plaintiffs cannot escape is they admitted the inventions were actually reduced to practice pursuant to the CRADA. *See* Dkt. No. 52 at 8. Based on this admission, this Court should find the Government, and its contractors, have a license to practice the '648 and '008 Patents.

## IV.    CONCLUSION

For the foregoing reasons, as well as those in Defendants' opening brief, Defendants' motion to dismiss should be granted.

Dated:  February 13, 2019

By:  /s/ Salvatore P. Tamburo
Salvatore P. Tamburo
**BLANK ROME LLP**
1825 Eye Street, NW
Washington, DC 20006
Tel:  (202) 420-2200

*Counsel for Oshkosh Corporation*

20

OF COUNSEL:

Scott Arnold
Justin A. Chiarodo
Dipu A. Doshi
Megan R. Wood
**BLANK ROME LLP**
1825 Eye Street NW
Washington, DC  20006
Tel:  (202) 420-2200
SArnold@BlankRome.com
JChiarodo@BlankRome.com
DDoshi@BlankRome.com
MWood@BlankRome.com

*Counsel for Oshkosh Corporation*

<u>*/s/* Holmes J. Hawkins, III</u>
HOLMES J. HAWKINS, III
King & Spalding, LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309
Tel:  (404) 572-4600
Email: hhawkins@kslaw.com
*Counsel for General Dynamics Land Systems, Inc.,*
*Force Protection, Inc., and General Dynamics*
*Land Systems – Force Protection, Inc.*


JOSEPH H. HUNT
Assistant Attorney General

GARY L. HAUSKEN
Director

<u>/s/ Lee Perla</u>
LEE PERLA
Trial Attorney, U.S. Dept. of Justice
Washington, D.C.  20530
Tel:  202-307-0334, Fax:  202-307-0345
Email:  lee.perla@usdoj.gov
*Counsel for the United States of America*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 13, 2019, the foregoing and the accompanying declaration of Salvatore P. Tamburo was filed electronically using the Court's ECF system, thereby serving all counsel of record.

<u>/s/ Salvatore P. Tamburo</u>
Salvatore P. Tamburo